JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Martin and Yolanda Yarnell
Bucks

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)* 20 W. 3rd St
Kenneth E. Aaron, Esq
Media PA 19063 / 40-566-5275

## DEFENDANTS
Bucks County et al
Bucks

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*    Not Known

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question §1983 *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & / ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander / Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' / Product Liability | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans | Liability / ☐ 368 Asbestos Personal | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| (Excludes Veterans) | ☐ 340 Marine / Injury Product | | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment | ☐ 345 Marine Product / Liability | | | ☐ 490 Cable/Sat TV |
| of Veteran's Benefits | Liability / **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | Act | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | Product Liability / ☐ 380 Other Personal | Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | ☐ 360 Other Personal / Property Damage | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | Injury / ☐ 385 Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information |
| | ☒ 362 Personal Injury - / Product Liability | Leave Act | | Act |
| | Medical Malpractice | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ / Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations / ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment / **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other / ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education / ☐ 555 Prison Condition | | | |
| | / ☐ 560 Civil Detainee - | | | |
| | / Conditions of | | | |
| | / Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause: Civil Rights / Medical

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ in excess of 75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE 3/21/2016    SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**     **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

    **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

    **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

    United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

    United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

    Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

    Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**     **Origin.** Place an "X" in one of the six boxes.

    Original Proceedings. (1) Cases which originate in the United States district courts.

    Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

    Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

    Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

    Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

    Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

    Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

    Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

*Marlin J. Yarnell / Yolanda Yarnell*

CIVIL ACTION

v.

*Bucks County et al*

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.　　　( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
　　and Human Services denying plaintiff Social Security Benefits.　　　( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.　( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
　　exposure to asbestos.　　　( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
　　commonly referred to as complex and that need special or intense management by
　　the court. (See reverse side of this form for a detailed explanation of special
　　management cases.)　　　(X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.　　( )

| | | |
|---|---|---|
| 3/21/2016 | *Kenneth B. Greal* | *Plaintiffs* |
| Date | Attorney-at-law | Attorney for |
| 610-316-8842 | 610-566-8997 | *KenGKgreanLtd.com* |
| Telephone | FAX Number | E-Mail Address |

(Civ. 660) 10/02

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _33 Butterfly Ln Levittown PA 5054_

Address of Defendant: _____

Place of Accident, Incident or Transaction: _Bucks County Correctional Facility_
(Use Reverse Side For Additional Space)

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))  Yes☐  No☒

Does this case involve multidistrict litigation possibilities?  Yes☐  No☒

*RELATED CASE, IF ANY:*

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?  Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, _Kenneth B. Green_ , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: _3/21/2016_  _____  _81608_
            Attorney-at-Law      Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _3/21/2016_  _____  _81608_
            Attorney-at-Law      Attorney I.D.#

CIV. 609 (5/2012)

# Civil Justice Expense and Delay Reduction Plan
## Section 1:03 - Assignment to a Management Track

(a)        The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)        In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying.that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)        The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)        Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)        Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARLIN J. YARNALL               CIVIL ACTION
AND YOLANDA YARNALL,
Individually and                   JURY TRIAL DEMANDED
as ADMINISTRATORS
OF THE ESTATE OF
MARLENE YARNALL on
Behalf of all heirs
33 Butterfly Lane
Levittown, PA 19054

PLAINTIFFS

v.

BUCKS COUNTY;
 BUCKS COUNTY CORRECTIONAL FACILITY;
BUCKS COUNTY DEPARTMENT OF CORRECTIONS;
TERRANCE P. MOORE, WARDEN;
WILLIAM PLANTIER, DIRECTOR OF CORRECTIONS;
CORRECTIONAL OFFICER F. WILLIAMS;
CORRECTIONAL OFFICER FORMAN;
CORRECTIONAL OFFICER HEILMAN;
CORRECTIONAL OFFICER WOODS;
CORRECTIONAL OFFICER THOMPSON;
JOHN/JANE DOE CORRECTIONAL OFFICERS
1 THROUGH 5;
PRIMECARE MEDICAL, INC.;
TODD W. HASKINS, RN CCHP;
BRITIANIE GRANDINETTE, PA-C;
VICTORIA GESSNER, M.D.;
KRISTEN HUL, LPN;
JENNIFER BETZ, BA;
KARA D'AMORE, RN;
KELLY RHOADS, LPN;
MEGAN HUGHES, PA-C;
SHAKIRA LEGETT, LPN;
RACHEL ONATE, LPN;
CHRIS PRESTON, RN;
STEPHANIE WAGNER, LPN;
ROBIN BOYER, LPN;
JESSICA PADILLA, MA;
MONIQUE ROSADO, MA;
CHRISTINE BATES, RN;

HEATHER JOHNSON, RN;
CAROL HAFFT, LPN;
SHEILA DIPINTO, RN;
ROBERT GERSTMAN, D.O.;
JOHN MARKLEY, PSYD.;
JOHN/JANE DOE DOCTORS/RN/LPN/
DO/PSYD/MA/PA-C 1 THROUGH 5
                              DEFENDANTS

## **COMPLAINT**

### I.     PRELIMNARY STATEMENT

1.  This is a civil rights survival and wrongful death action brought under 42 U.S.C. section

    1983 and raising supplemental state-law claims concerning the defendants' deliberate

    indifference and negligence in relation to the urgent need for proper medical treatment

    for plaintiffs' decedent, 48 year old Marlene Yarnall, while she was in custody/detention

    at the Bucks County Correctional Facility ("BCCF"). Plaintiffs sue inter alia, the

    corrections facility, the involved correctional officers, the board/department of prisons for

    Bucks County, director of corrections, warden, Bucks County, the correctional facility's

    provider of health services PrimeCare Medical, Inc., medical, mental and nursing

    personnel working with or for the provider of health services specific

    manager/supervisors of the provider of health services, John/Jane Does 1 through 5

    medical, mental, nursing personnel and John/Jane Does 1 through 5 correctional officers.

2.  Plaintiffs now seek on behalf of decedent. Yarnall's estate and heirs, damages for the

    substantial pain and suffering and financial losses caused by defendants' conduct.

### II.     JURISDICTION AND VENUE

3.  This court has jurisdiction over the subject matter of this Complaint under 42 U.S.C.

    section 1983 and 28 U.S.C. sections 1331, 1343(a)(3), 1343(a)(4) and 1367(a). Venue is

proper in this district pursuant to 28 U.S.C. section 1391 because the cause of action upon which the complaint is based arose in Bucks County, Pennsylvania, which is in the Eastern District of Pennsylvania.

4. The matter in controversy exceeds $75,000.00 exclusive of interest and costs.

III.    <u>PARTIES</u>

5. Plaintiffs, Marlin J. Yarnall and Yolanda Yarnall are citizens of the Commonwealth of Pennsylvania residing therein at 33 Butterfly Lane, Levittown PA 19054. Mr. and Mrs. Yarnall are decedent's surviving parents and they bring this action on their own behalf and on behalf of all heirs, and in their capacity as Administrators of the Marlene Yarnall's Estate. On April 23, 2014 the Register of Wills of Bucks County granted Mr. and Mrs. Yarnall Letters of Administration. See **Exhibit "A"**.

6. Defendant Bucks County (BC) is a municipal governmental entity in the Commonwealth of Pennsylvania, which manages and oversees the defendants Bucks County Correctional Facility, Bucks County Department of Corrections, and all nursing/medical/mental health and correctional officers delivering services to inmates and detainees in the correction al facility. This defendant can legally be served civil legal process by and through **Bucks County Solicitor's Office** *Michael A. Klimpl, Solicitor* Bucks County Courthouse, 55 E. Court St. Fifth Floor Doylestown, PA 18901.

7. Defendant Bucks County Correctional Facility (BCCF) is an integral part of defendant Bucks County government with a place of business located at 1730 S Easton Rd, Doylestown, PA 18901. This defendant can legally be served civil legal process by and through **Bucks County Solicitor's Office** *Michael A. Klimpl, Solicitor* Bucks County Courthouse, 55 E. Court St. Fifth Floor Doylestown, PA 18901.

3

8. Defendant Bucks County Department of Corrections (BCDC) is an integral part of defendant Bucks County government with a place of business located at 1730 S Easton Rd, Doylestown, PA 18901. This defendant can legally be served civil legal process by and through **Bucks County Solicitor's Office** *Michael A. Klimpl, Solicitor* Bucks County Courthouse, 55 E. Court St. Fifth Floor Doylestown, PA 18901.

9. Upon information and belief, Terrance P. Moore, individually and officially was and is at all times relevant to this Complaint, the Warden responsible for overall conduct of all correctional officers and medical staff contact with inmates and detainees for defendant BCCF at 1730 S Easton Rd, Doylestown, PA 18901. This defendant can legally be served civil legal process by and through **Bucks County Solicitor's Office** *Michael A. Klimpl, Solicitor* Bucks County Courthouse, 55 E. Court St. Fifth Floor Doylestown, PA 18901.

10. Upon information and belief, William Plantier individually and officially, was and is at all times relevant to this Complaint, the Director of Corrections responsible for overall conduct of the Warden, and all correctional officers and medical staff contact with inmates and detainees for defendant BCCF at 1730 S Easton Rd, Doylestown, PA 18901. This defendant can legally be served civil legal process by and through **Bucks County Solicitor's Office** *Michael A. Klimpl, Solicitor,* Bucks County Courthouse 55 E. Court St. Fifth Floor Doylestown, PA 18901.

11. Upon information and belief, defendant Correctional Officer F. Williams (F. Williams), individually and officially, is an adult individual and citizen of the Commonwealth of Pennsylvania. At all times relevant to the Complaint F. Williams was a correctional officer at defendant BCCF who by virtue of his authority was vested with the

responsibility of monitoring the area where decedent Yarnall was detained. This defendant can legally be served civil legal process by and through **Bucks County Solicitor's Office** *Michael A. Klimpl, Solicitor,* Bucks County Courthouse 55 E. Court St. Fifth Floor Doylestown, PA 18901.

12. Upon information and belief, defendant Correctional Officer Forman (Forman) , individually and officially, is an adult individual and citizen of the Commonwealth of Pennsylvania. At all times relevant to the Complaint, Forman was a correctional officer at defendant BCCF who by virtue of his authority was vested with the responsibility of monitoring the area where decedent Yarnall was detained. This defendant can legally be served civil legal process by and through **Bucks County Solicitor's Office** *Michael A. Klimpl, Solicitor,* Bucks County Courthouse 55 E. Court St. Fifth Floor Doylestown, PA 18901.

13. Upon information and belief, defendant Correctional Officer Heilman (Heilman) , individually and officially, is an adult individual and citizen of the Commonwealth of Pennsylvania. At all times relevant to the Complaint, Heilman was a correctional officer at defendant BCCF who by virtue of his authority was vested with the responsibility of monitoring the area where decedent Yarnall was detained. This defendant can legally be served civil legal process by and through **Bucks County Solicitor's Office** *Michael A. Klimpl, Solicitor,* Bucks County Courthouse 55 E. Court St. Fifth Floor Doylestown, PA 18901.

14. Upon information and belief, defendant Correctional Officer Woods (Woods) , individually and officially, is an adult individual and citizen of the Commonwealth of Pennsylvania. At all times relevant to the Complaint, Woods was a correctional officer at

defendant BCCF who by virtue of his authority was vested with the responsibility of monitoring the area where decedent Yarnall was detained. This defendant can legally be served civil legal process by and through **Bucks County Solicitor's Office** *Michael A. Klimpl, Solicitor,* Bucks County Courthouse 55 E. Court St. Fifth Floor Doylestown, PA 18901.

15. Upon information and belief, defendant Correctional Officer Thompson (Thompson) , individually and officially, is an adult individual and citizen of the Commonwealth of Pennsylvania. At all times relevant to the Complaint, Thompson was a correctional officer at defendant BCCF who by virtue of his authority was vested with the responsibility of monitoring the area where decedent Yarnall was detained. This defendant can legally be served civil legal process by and through **Bucks County Solicitor's Office** *Michael A. Klimpl, Solicitor,* Bucks County Courthouse 55 E. Court St. Fifth Floor Doylestown, PA 18901.

16. Upon information and belief, defendants correctional officers John and/or Jane Does 1 through 5, individually and officially, were an adult individuals and citizens of the Commonwealth of Pennsylvania. At all times relevant to the Complaint, defendants correctional officers John and/or Jane Does 1 through 5, were correctional officers at defendant BCCF who by virtue of their authority were vested with the responsibility of monitoring the area where decedent Yarnall was detained. These defendants can legally be served civil legal process by and through **Bucks County Solicitor's Office** *Michael A. Klimpl, Solicitor,* Bucks County Courthouse 55 E. Court St. Fifth Floor Doylestown, PA 18901.

17. Defendant PrimeCare Medical, Inc. (PCM) is a corporation or other legally organized business entity authorized to conduct business in the Commonwealth of Pennsylvania, with headquarters located at Prime Care Medical, Inc., 3940 Locust Lane Harrisburg, PA 17109.

18. At all times relevant to this Complaint, defendant PCM was the holder of a contract with defendants BC, BCDC and BCCF to provide all medical services to inmates/detainees at defendant BCCF.

19. At all times relevant to this Complaint, defendant Todd W. Haskins, (Haskins) R.N. CCHP, individually and officially, was Vice President of Operations for defendant PCM and oversaw all operations including those conducted at defendant BCCF. Defendant Haskins was and is a citizen of the Commonwealth of Pennsylvania and resides within the Commonwealth. Defendant Haskins can legally be served civil legal process at Prime Care Medical, Inc., 3940 Locust Lane Harrisburg, PA 17109.

20. At all times relevant to this Complaint, defendant Britanie Grandinette, PA-C (Grandinette) individually and officially, was employed as a Physician Assistant for defendant PCM and assigned to provide medical services at defendant BCCF. Defendant Grandinette was and is a citizen of the Commonwealth of Pennsylvania and resides within the Commonwealth. Defendant Grandinette can legally be served civil legal process at Prime Care Medical, Inc., 3940 Locust Lane Harrisburg, PA 17109.

21. At all times relevant to this Complaint, defendant Victoria Gessner, M.D. (Gessner) individually and officially, was employed as a medical doctor for defendant PCM and assigned to provide medical services at defendant BCCF. Defendant Gessner was and is a citizen of the Commonwealth of Pennsylvania and resides within the Commonwealth.

Defendant Gessner can legally be served civil legal process at Prime Care Medical, Inc., 3940 Locust Lane Harrisburg, PA 17109.

22. At all times relevant to this Complaint, defendant Kristen Hul, LPN (Hul) individually and officially, was employed as a licensed practical nurse for defendant PCM and assigned to provide medical services at defendant BCCF. Defendant Hul was and is a citizen of the Commonwealth of Pennsylvania and resides within the Commonwealth. Defendant Hul can legally be served civil legal process at Prime Care Medical, Inc., 3940 Locust Lane Harrisburg, PA 17109.

23. At all times relevant to this Complaint, defendant Jennifer Betz, BA (Betz) individually and officially, was employed by and for defendant PCM and assigned to provide medical services at defendant BCCF. Defendant Betz was and is a citizen of the Commonwealth of Pennsylvania and resides within the Commonwealth. Defendant Betz can legally be served civil legal process at Prime Care Medical, Inc., 3940 Locust Lane Harrisburg, PA 17109.

24. At all times relevant to this Complaint, defendant Kara D'Amore, RN (Amore) individually and officially, was employed as a registered nurse for defendant PCM and assigned to provide medical services at defendant BCCF. Defendant D'Amore was and is a citizen of the Commonwealth of Pennsylvania and resides within the Commonwealth. Defendant D'Amore can legally be served civil legal process at Prime Care Medical, Inc., 3940 Locust Lane Harrisburg, PA 17109.

25. At all times relevant to this Complaint, defendant Kelly Rhoads, LPN (Rhoads) individually and officially, was employed as a licensed practical nurse for defendant PCM and assigned to provide medical services at defendant BCCF. Defendant Rhoads

was and is a citizen of the Commonwealth of Pennsylvania and resides within the Commonwealth. Defendant Rhoads can legally be served civil legal process at Prime Care Medical, Inc., 3940 Locust Lane Harrisburg, PA 17109.

26. At all times relevant to this Complaint, defendant Megan Hughes, PA-C (Hughes) individually and officially, was employed as a physician assistant for defendant PCM and assigned to provide medical services at defendant BCCF. Defendant Hughes was and is a citizen of the Commonwealth of Pennsylvania and resides within the Commonwealth. Defendant Hughes can legally be served civil legal process at Prime Care Medical, Inc., 3940 Locust Lane Harrisburg, PA 17109.

27. At all times relevant to this Complaint, defendant Shakira Legett, LPN (Legett) individually and officially, was employed as a licensed practical nurse for defendant PCM and assigned to provide medical services at defendant BCCF. Defendant Legett was and is a citizen of the Commonwealth of Pennsylvania and resides within the Commonwealth. Defendant Legett can legally be served civil legal process at Prime Care Medical, Inc., 3940 Locust Lane Harrisburg, PA 17109.

28. At all times relevant to this Complaint, defendant Rachel Onate, LPN (Onate) individually and officially, was employed as a licensed practical nurse for defendant PCM and assigned to provide medical services at defendant BCCF. Defendant Onate was and is a citizen of the Commonwealth of Pennsylvania and resides within the Commonwealth. Defendant Onate can legally be served civil legal process at Prime Care Medical, Inc., 3940 Locust Lane Harrisburg, PA 17109.

29. At all times relevant to this Complaint, defendant Chris Preston, RN (Preston) individually and officially, was employed as a registered nurse for defendant PCM and

assigned to provide medical services at defendant BCCF. Defendant Preston was and is a citizen of the Commonwealth of Pennsylvania and resides within the Commonwealth. Defendant Preston can legally be served civil legal process at Prime Care Medical, Inc., 3940 Locust Lane Harrisburg, PA 17109.

30. At all times relevant to this Complaint, defendant Stephanie Wagner, LPN (Wagner) individually and officially, was employed as a licensed practical nurse for defendant PCM and assigned to provide medical services at defendant BCCF.

31. At all times relevant to this Complaint, defendant Robin Boyer, LPN (Boyer) individually and officially, was employed as a licensed practical nurse for defendant PCM and assigned to provide medical services at defendant BCCF.

32. At all times relevant to this Complaint, defendant Jessica Padilla, MA (Padilla) individually and officially, was employed as a medical assistant for defendant PCM and assigned to provide medical services at defendant BCCF.

33. At all times relevant to this Complaint, defendant Monique Rosado, MA (Rosado) individually and officially, was employed as a medical assistant for defendant PCM and assigned to provide medical services at defendant BCCF.

34. At all times relevant to this Complaint, defendant Christine Bates, RN (Bates) individually and officially, was employed as a registered nurse for defendant PCM and assigned to provide medical services at defendant BCCF.

35. At all times relevant to this Complaint, defendant Heather Johnson, RN (Johnson) individually and officially, was employed as a registered nurse for defendant PCM and assigned to provide medical services at defendant BCCF.

36. At all times relevant to this Complaint, defendant Carol Hafft, LPN (Hafft) individually and officially, was employed as a licensed practical nurse for defendant PCM and assigned to provide medical services at defendant BCCF.

37. At all times relevant to this Complaint, defendant Sheila DiPinto, RN (DiPinto) individually and officially, was employed as a registered nurse for defendant PCM and assigned to provide medical services at defendant BCCF.

38. Defendants, Wagner, Boyer, Padilla, Rosado, Bates, Johnson, Hafft and DiPinto are citizens of the Commonwealth of Pennsylvania residing therein at the following addresses at which they can be legally served with civil legal process: (1) Wagner: 805 Lillian Lane Warminster PA 18974; (2) Boyer: 25 Homestead Road Levittown PA 19056; (3) Padilla: 347 Penn Street Bristol PA 19007; (4) Rosado: 1970 Veterans Highway Levittown PA 19056; (5) Bates: 775 Central Avenue Southampton PA 18966; (6) Johnson: 7 South Vassar Dr. Quakertown PA 18951; (7) Hafft: 1400 Marlyns Lane North Wales PA 19454; (8) DiPinto: 3616 Valley Meadow Road Bensalem, PA 19020

39. At all times relevant to this Complaint, defendant Robert Gerstman, D.O (Gerstman) a psychiatrist, individually and officially, was an independent contractor and/or employee and/or appeared to be an agent, servant or employee of defendant PCM, working as a licensed doctor of osteopathic medicine and psychiatrist for defendant PCM and assigned to provide medical services at defendant BCCF. Defendant Gerstman is an adult and resident of the Commonwealth of Pennsylvania and is current located for purposes of receiving civil legal process at Gesinger Medical Center, 100 N. Academy Avenue, Danville, PA 17822.

40. At all times relevant to this Complaint, defendant John Markley, PsyD. (Markley) individually and officially, was an independent contractor and/or employee and/or appeared to be an agent, servant or employee of defendant PCM, working as a licensed doctor of psychology for defendant PCM and assigned to provide medical services at defendant BCCF. Defendant Markley is an adult and resident of the State of Illinois and is current located for purposes of receiving civil legal process at 310 W. Plaza Drive, Carterville, IL 62918.

41. Upon information and belief, at all times relevant to this Complaint defendants medical doctors/RN/LPN/DO/PsyD/MA/and/or PA-C's John and/or Jane Does 1 through 5, individually and officially, were an adult individuals and citizens of the Commonwealth of Pennsylvania. At all times relevant to the Complaint, defendants medical doctors/RN/LPN/DO/PsyD/MA/PA-C's John and/or Jane Does 1 through 5 worked as providers of medical care for defendant PCM and assigned to provide medical services at defendant BCCF.

42. At all times relevant to this Complaint, all defendants acted under color of state law.

43. At all times relevant to this Complaint, defendants Grandinette; Gessner; Hul; Betz; D'Amore; Rhoads; Hughes; Legett; Onate; Preston; Wagner; Boyer; Padilla; Rosado; Bates; Johnson; Hafft; DiPinto; Gerstman; Markley and Haskins; and Jane/John Does medical doctors/RN/LPN/DO/PsyD/MA/and/or PA-C's 1 through 5, were acting as agents, servants and/or employees or appearing as if they were the agents, servants and/or employees of defendant PMC, and were acting within the scope and course of their employment and under the direct control and supervision of defendant PMC. They are sued in their individual as well as official capacities. At all times relevant to this

12

Complaint these defendants provided medical/nursing/mental health care to decedent Yarnall.

44. At all times relevant to this Complaint, defendants Moore; Plantier; F. Williams; Forman; Heilman; Woods; Thompson; and Jane/John Does correctional officers 1 through 5, were acting as agents, servants and/or employees or appearing as if they were the agents, servants and/or employees of defendants BCCF, BCDC and BC and were acting within the scope and course of their employment and under the direct control and supervision of defendants BCCF, BCDC and BC. They are sued in their individual as well as official capacities.

IV.　FACTS

45. At relevant times relevant hereto, decedent Marlene Yarnall was incarcerated/detained and/or in custody at the BCCF, F module.

46. At all relevant times relevant hereto, defendants BCCF, BCDC, BC, PMC, were responsible for implementing policies and procedures for the monitoring, checking inmates/detainees, and managing all of their medical care and treatment, including the serious medical needs of decedent Marlene Yarnall.

47. At all times relevant hereto, defendant PMC by contract with defendants BC, BCCF and/or BCDC together with PMC were responsible for creating, amending revising and implementing policies and procedures for the monitoring, checking/monitoring inmates/detainees, and managing all their medical care and treatment, including the serious medical needs of decedent Yarnall during drug detoxification.

48. At all times relevant hereto, all defendants and especially defendants Grandinette; Gessner; Hul; Betz; D'Amore; Rhoads; Hughes; Legett; Onate; Preston; Wagner; Boyer;

13

Padilla; Rosado; Bates; Johnson; Hafft; DiPinto; Gerstman; Markley and Haskins; and

Jane/John Does medical doctors/RN/LPN/DO/PsyD/MA/and/or PA-C's 1 through 5, who

provided medical/nursing/mental health care to decedent Yarnall, knew and were

obligated by policy and practice and standards of care and good medical/nursing/mental

health practices/care, to perform thorough and complete/adequate medical history and

physical/mental examinations of all inmates/detainees, including decedent Yarnall, upon

their entrance into BCCF and during inmates/detainees' entire stay/incarceration. The

purpose of such intake history and examinations is to discover any potential serious or

existing medical need and/or pre-existing medical conditions/needs and to provide and

plan for and accommodate any and all necessary medical treatment for such condition(s).

Further said standards, policy and/or practices required/recommended that

inmates/detainees with serious preexisting and existing medical conditions/need  like

inter alia, cardiac issues/diseases, seizure disorders require inter alia, have much more

aggressive monitoring/following up, treatment, care, drug therapy/withdrawal therapy

including but not limited to transfer or referral from the detention facility, BCCF,  to a

hospital or other more well equipped medical provider/facility/area to handle events like

inmate/detainee unresponsiveness, cardiac/respiratory arrest, sudden cardiac arrest etc.,

especially when said detainees, including decedent Yarnall, are going through a

physically and mentally grueling heroin et al detoxification treatment program while in

the custody and control of all defendants named herein.

49. Upon her incarceration/detention into BCCF on or about March 15/19 2014, all

defendants, including Grandinette; Gessner; Hul; Betz; D'Amore; Rhoads; Hughes;

Legett; Onate; Preston; Wagner; Boyer; Padilla; Rosado; Bates; Johnson; Hafft; DiPinto;

14

Gerstman; Markley and Haskins; and Jane/John Does medical

doctors/RN/LPN/DO/PsyD/MA/and/or PA-C's 1 through 5 AND Moore; Plantier; F.

Williams; Forman; Heilman; Woods; Thompson; and Jane/John Does correctional

officers 1 through 5 knew that decedent Marlene Yarnall was suffering from known

existing and pre-existing serious medical conditions inter alia, of heart/cardiac disease,

myocardical infarction (heart attack), cardiac/respiratory arrest, seizure disorder,

ventricular fibrillation, pulmonary edema, lactic acidosis, respiratory acidosis, abnormal

troponins, abnormal LFTs, asthma, mechanical ventilation as well as heroin/opiate

addictions.[1] In fact, decedent Yarnall provided a detailed medical history to defendant

Nurse Hul and defendant doctors Gessner; Gerstman and Markley and other defendants,

which included the June 2013 cardiac arrest et al event described above. This medical

history was also known by defendants Moore; Plantier; F. Williams; Forman; Heilman;

Woods; Thompson; and Jane/John Does correctional officers 1 through 5.

50. On or about March 19/20, 2014, despite knowing of decedent Yarnall's serious prior

medical history/conditions/needs and existing serious medical history/needs, all

defendants were deliberately indifferent toward decedent Yarnall's serious existing and

preexisting medical needs, by starting decedent Yarnall on a usual detoxification program

for her heroin et. al. addictions.

51. From on or about March 19, 2014 through to and including March 22, 2014, the date of

decedent Yarnall's death, all defendants were deliberately indifferent, as well as

---

[1] As recently as June 9, 2013 decedent Yarnall was incarcerated/detained at defendant BCCF while undergoing detoxification was found unresponsive at BCCF and was emergently transferred to Doylestown Hospital for resuscitative procedures and medical treatment for ongoing serious medical conditions inter alia of heart/cardiac disease, myocardial infarction (heart attack), cardiac/respiratory arrest, seizure disorder, ventricular fibrillation, pulmonary edema, lactic acidosis, respiratory acidosis, abnormal troponins, abnormal LFTs, asthma, mechanical ventilation as well as heroin/opiate addictions. This information was known by all defendants as of March 15/18, 2014 through March 22, 2014 and well prior to decedent Yarnall's death on March 22, 2014.

knowingly, willfully and negligently failed to address decedent Yarnall's serious existing and preexisting medical needs/conditions/history which increased risk of death that did eventually occur on March 22, 2014, directly related to said known serious existing/preexisting medical conditions/needs in combination with the knowingly and deliberately faulty detox/monitoring regime custom/policy/practice defendants knowingly/deliberately/negligently provided to decedent Yarnall.

52. Between March 19/20, 2014 and her death on March 22, 2014 decedent Yarnall continuously exhibited physical and mental signs of severe drug withdrawal, in combination with her serious preexisting medical history/conditions/medical needs, serious existing medical history/conditions/needs, which required more aggressive timely monitoring, timely treatment and medical care than what defendants were providing to decedent Yarnall, and as such all defendants deliberately ignored, were indifferent, willful wanton, reckless and negligent in their conduct/treatment of decedent Yarnall which ultimately resulted in her death on March 22, 2014 at defendant BCCF after being found unresponsive and deceased in her cell at BCCF by defendants.

53. Prior to and in the morning hours on March 22, 2014 up to her death, there was a complete knowing and deliberately indifferent failure committed by all defendants as well as negligence, to timely address decedent's specific serious preexisting medical history/conditions/medical needs, her serious existing medical history/conditions/needs including but not limited to timely checking and monitoring vital signs, respiratory rate, body temperature, heart conditions/rate, blood pressure and/or in failing to move, refer or timely transfer decedent to a hospital or other medical facility appropriate equipped and staffed to handle decedents serious medical needs in light of her preexisting and existing

medical conditions during a rigorous and grueling detoxification regime she was subjected to at the hands of all defendants.

54. On March 22, 2014 decedent Yarnall, while in the custody and control of all defendants, for the reasons set forth above and incorporated herein by reference, suffered a completely preventable fatal cardiac arrest and death.

55. Had all defendants properly monitored/treated/provided decedent Yarnall with proper and/or more aggressive timely medical monitoring and treatment consistent with her specific serious preexisting and existing medical conditions and needs, decedent Yarnall would not have died on March 22, 2014. As a result, decedent Yarnall's death was a direct and proximate result of all defendants' knowing and deliberately indifferent and negligent conduct via policies and practices affecting decedent's treatment as well as deliberately indifferent and negligent conduct specific to decedent Yarnall's serious medical conditions/needs preexisting and existing up through and including her death on March 22, 2014.

56. Decedent Yarnall's known medical history and known present serious medical needs in combination with her symptoms, gave all defendants ample opportunity to properly timely monitor, diagnose, timely treat and give decedent more aggressive appropriate necessary medical care.

57. Nothwithstanding all defendants' knowledge of decedent Yarnall's preexisting and existing serious medical conditions/history/needs, all defendants were deliberately indifferent and negligent in knowingly actively failing to ensure that decedent was properly and timely monitored and/or treated and/or timely referred for more aggressive medical monitoring and treatment under the circumstances.

58. At all times relevant hereto, as evidenced by the deliberately indifferent and negligent lack of appropriate care provided to decedent Yarnall in this case, defendants BC, BCCF, BCDC and PMC with deliberate indifference, failed to develop and implement policies, practices and procedures to ensure that inmates/detainees at BCCF would receive appropriate care for serious preexisting and existing serious medical needs and/or outside medical services other than services provided by defendant PMC.

59. At all times relevant to this Complaint, as evidenced by the deliberately indifferent and negligent lack of appropriate care provided to decedent Yarnall in this case, defendants BC, BCCF, BCDC and PMC with deliberate indifference, failed to properly train, supervise and discipline medical/nursing/correctional officer defendant personnel at BCCF so as to ensure that inmates/detainees would receive appropriate and timely care for serious preexisting and existing serious medical needs and/or timely referral to outside medical services other than services provided by defendant PMC.

60. At all times relevant to this Complaint, defendants BC, PMC, BCBC and BCCF with deliberate indifference to the serious medical needs of inmates/detainees including decedent at BCCF, operated under a contractual agreement that created a powerful financial disincentive for PMC's medical/nursing staff to conduct diagnostic testing for a seriously ill inmate/detainee or send a said inmate/detainee, including decedent Yarnall, for timely outside medical services.

61. At all times relevant to this Complaint, the conduct of all defendants was in willful, reckless and callous disregard of decedent Yarnall's rights under federal and state law.

62. As a direct and proximate result of the conduct of all defendants, decedent Yarnall experienced enormous physical and emotional pain and suffering.

63. As a direct and proximate result of the conduct of all defendants, decedent Yarnall was caused to lose her life and thereby caused to suffer complete loss of earnings and earnings capacity.

64. Decedent Yarnall's death was solely due to conduct all defendants as aforesaid above and below.

## V.  COUNT I (WRONGFUL DEATH AND SURVIVAL ACTIONS)
(PLAINTIFF v. ALL DEFENDANTS)

65. All other paragraphs of this Complaint are incorporated herein by reference.

66. Plaintiffs, as administrators of the Estate of Marlene Yarnall, brings this action on behalf of decedent Yarnall's heirs under the Pennsylvania Wrongful Death Act, 42 Pa.C.S.A section 8301.

67. Decedent Yarnall's heirs under the Wrongful Death Act are: (1) her son, Aaron Hastie, 1446 Gibson Road, B-29, Bensalem, PA 19020; (2) her father, Marlin J. Yarnall, 33 Butterfly Lane, Levittown, PA 19054; and (3) her mother, Yolanda Yarnall, 33 Butterfly Lane, Levittown, PA 19054.

68. Decedent Yarnall did not bring an action against defendants for damages for the injuries causing her death during her lifetime.

69. Decedent Yarnall's heirs have, by reason of decedent's death, suffered pecuniary loss, and have or will incur expenses for the cost of decedent's funeral, the costs of decedent's headstone and other death related expenses and expenses related to costs of administering decedent's estate.

70. Decedent Yarnall's heirs have, by reason of decedent's death, suffered pecuniary loss, including pecuniary loss in form of contributions and financial support from decedent for food, clothing, medical care, education, entertainment, recreation and gifts.

19

71. Plaintiffs also bring this action on behalf of the Estate of Marlene Yarnall under the Pennsylvania Survival Statute, 42 Pa.C.S.A section 8302, under which all claims decedent Yarnall would have been able to bring had she survived, may be brought by decedent's estate.

72. Decedent Yarnall's estate has, by reason of decedent's death, suffered pecuniary loss, and has or will incur expenses for the costs of decedent's funeral, the costs of headstone and other death related expenses and expenses related to costs of administering decedent's estate.

73. As a direct and proximate result of the conduct of all defendants, decedent Yarnall experienced extraodianary physical and emotional pain and suffering before her death and as a result of her death, suffered complete loss of earnings and earnings capacity.

74. Plaintiffs, via this survival action, seek damages for these harms caused to decedent Yarnall.

VI.     COUNT II (FEDERAL CONSTITUTIONAL CLAIMS)
(PLAINTIFFS v. DEFENDANTS GRANDINETTE; GESSNER; HUL; BETZ; D'AMORE; RHOADS; HUGHES; LEGETT; ONATE; PRESTON; WAGNER; BOYER; PADILLA; ROSADO; BATES; JOHNSON; HAFFT; DIPINTO; GERSTMAN; MARKLEY AND HASKINS; AND JANE/JOHN DOES MEDICAL DOCTORS/RN/LPN/DO/PSYD/MA/AND/OR PA-C'S 1 THROUGH 5 AND MOORE; PLANTIER; F. WILLIAMS; FORMAN; HEILMAN; WOODS; THOMPSON; AND JANE/JOHN DOES CORRECTIONAL OFFICERS 1 THROUGH 5)

75. All other paragraphs of this Complaint are incorporated herein by reference.

76. Defendants, Grandinette; Gessner; Hul; Betz; D'Amore; Rhoads; Hughes; Legett; Onate; Preston; Wagner; Boyer; Padilla; Rosado; Bates; Johnson; Hafft; DiPinto; Gerstman; Markley and Haskins; and Jane/John Does medical doctors/RN/LPN/DO/PsyD/MA/and/or PA-C's 1 through 5 AND Moore; Plantier; F. Williams; Forman; Heilman; Woods; Thompson; and Jane/John Does correctional officers 1 through 5 were deliberately indifferent to decedent Yarnall's serious medical needs and thereby violated decedent Yarnall's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or decedent Yarnall's rights to due process of law under the Fourteenth Amendment to the United States Constitution.

VII.   COUNT III (FEDERAL CONSTITUTIONAL CLAIMS)
(PLAINTIFFS v. DEFENDANTS BC, BCCF, BCBC, PMC)

77. All other paragraphs of this Complaint are incorporated herein by reference.

78. The violations of decedent Yarnall's constitutional rights under the Eighth and/or Fourteenth Amendments to the United States Constitution, plaintiffs damages and the conduct of the individual defendants were directly and proximately caused by the actions and/or inactions of defendants BC, BCCF, BCDC, PMC , which have with deliberate indifference: (a) failed to establish policies, practices and procedures to ensure that inmate/detainees at BCCF receive timely appropriate care for serious medical needs and if necessary, timely diagnostic testing and/or timely monitoring and/or timely referral to outside medical services; (b) failed to ensure through training, supervision and discipline that medical staff at BCCF, in necessary circumstances, conduct timely care and diagnostic testing and/or monitoring and or make a timely referral for outside medical services; and (c) entered into a contractual relationship providing PMC and PMC

21

medical/nursing staff with a strong financial disincentive to conduct more timely diagnostic testing and/or monitoring and/or refer inmates/detainees for timely outside medical services.

VIII.   COUNT IV (STATE LAW NEGLIGENCE CLAIMS)
(PLAINTIFFS v. GRANDINETTE; GESSNER; HUL; BETZ; D'AMORE;
RHOADS; HUGHES; LEGETT; ONATE; PRESTON; WAGNER; BOYER;
PADILLA; ROSADO; BATES; JOHNSON; HAFFT; DIPINTO; GERSTMAN;
MARKLEY AND HASKINS; AND JANE/JOHN DOES MEDICAL
DOCTORS/RN/LPN/DO/PSYD/MA/AND/OR PA-C'S 1 THROUGH 5 )

79. All other paragraphs of this Complaint are incorporated herein by reference.

80. Defendants Grandinette; Gessner; Hul; Betz; D'Amore; Rhoads; Hughes; Legett; Onate; Preston; Wagner; Boyer; Padilla; Rosado; Bates; Johnson; Hafft; DiPinto; Gerstman; Markley and Haskins; and Jane/John Does medical doctors/RN/LPN/DO/PsyD/MA/and/or PA-C's 1 through 5 had a duty to comply with generally accepted medical standards of care in their medical treatment of decedent Yarnall.

81. Defendants Grandinette; Gessner; Hul; Betz; D'Amore; Rhoads; Hughes; Legett; Onate; Preston; Wagner; Boyer; Padilla; Rosado; Bates; Johnson; Hafft; DiPinto; Gerstman; Markley and Haskins; and Jane/John Does medical doctors/RN/LPN/DO/PsyD/MA/and/or PA-C's 1 through 5 violated their duty of care to decedent Yarnall.

82. The defendants' violation of their duty of care to decedent Yarnall was a direct and proximate cause and a substantial factor in bringing about decedent Yarnall's damages as outlined above, and as a result, defendants are liable to plaintiffs.

83. Because the individual defendants were acting as agents, servants and/or employees of defendants PMC and/or BCCF and/or BCDC and/or BC and appeared to be acting as as

agents, servants and/or employees of defendants PMC and/or BCCF and/or BCDC and/or BC and because the individual defendants were acting within the scope and course of their employment and under the direct control and supervision of defendants PMC and/or BCCF and/or BCBC and/or BC, defendants PMC and/or BCCF and/or BCDC and/or BC are liable to plaintiff on the basis of respondeat superior liability.

## IX.  REQUESTED RELIEF

Wherefore, plaintiffs respectfully request and demand:

A.  Compensatory damages as to all defendants;

B.  Punitive damages as to all defendants;

C.  Reasonable attorney's fees and costs;

D.  Such other further relief as may appear just and appropriate;

E.  Plaintiff hereby demands a jury trial.

DATE: 3/21/2016

BY: _____
Kenneth B. Grear, Esquire
PA I.D # 81608
Attorney for Plaintiffs

Kenneth B. Grear, Ltd.
20 W. Third St. 3rd Floor
Media, PA 19063
Phone: 610-566-5275
Fax: 610-566-5497
Email: ken@kbgrearltd.com

# Donald Petrille, Jr., Esquire
## Register of Wills of Bucks County, Pennsylvania
### Certificate of Grant of Letters

Estate of: MARLENE YARNALL

Late of: BENSALEM TOWNSHIP

File No.: 09-2014-00979

Date of Death: MARCH 22, 2014

Social Security No.: 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

**Whereas,** the Grant of **LETTERS OF ADMINISTRATION** is required for the administration of the estate;

**Now, therefore, I, Donald Petrille, Jr., Esquire,** Register of Wills in and for the County of Bucks in the Commonwealth of Pennsylvania, hereby certify that I have this day granted **LETTERS OF ADMINISTRATION to MARLIN J. YARNALL and YOLANDA YARNALL**, who have duly qualified as co-administrator and co-administratrix of the estate of the above-named decedent and have agreed to administer the estate according to law, all of which fully appears of record in my office at Bucks County Courthouse, Doylestown, Pennsylvania.

**In testimony whereof,** I have hereunto set my hand and affixed the seal of my Office on this 23rd day of April, 2014.

Donald Petrille, Jr., Esquire
Register of Wills

PLAINTIFF'S
EXHIBIT
A